TONI L. WHITE, SBN 210119
LAW OFFICE OF TONI WHITE
PO Box 1081
El Dorado, CA 95623-1081
Phone: 530-885-6244
Email: toniwhite6311@gmail.com

Attorney for Defendant
ANTONIO LONG ANDREWS

**UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ANTONIO LONG ANDREWS,<br><br>    Defendant. | Case No.: 2:18-cr-00256 JAM<br><br>**MOTION FOR NEW TRIAL (Fed. R. of Crim. P. 33); RENEWED MOTION FOR ACQUITTAL (Fed. R of Crim. P. 29)** |

INTRODUCTION

Mr. Long Andrews moves for a new trial pursuant to Federal Rule of Criminal Procedure 33 because the interest of justice so requires. Additionally, Mr. Long Andrews renews his Motion for Acquittal pursuant to Federal Rule of Criminal Procedure 29.

II.

MOTION FOR NEW TRIAL (FED. R. CRIM. P. 33)

Antonio Long Andrews moves this Court pursuant to Federal Rule of Criminal Procedure 33 for a new trial, because the interest of justice so requires. Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

Federal Rule of Criminal Procedure 33(a) allows a district court to "vacate any judgment and grant a new trial if the interest of justice so requires." *Eberhart v. United States*, 546 U.S.12, 13 (2005).

A.

THE GOVERNMENT FAILED TO PROVE INTENT

Mr. Long Andrews was convicted of Sex Trafficking by Force, Threats of Force, Fraud or Coercion, in violation of 18 U.S.C. sections 1591(a)(1) and (b)(1). Section 1591(a)(1) prohibits anyone, in or affecting interstate commerce, to recruit, entice, harbor, transport, provide, obtain or maintain by any means a person knowing….that force, fraud or coercion would be used to cause such person to engage in a commercial sex act. *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010) discusses the intent necessary for a conviction pursuant to 18 U.S.C. section 1591. The statute requires that, at the time of engagement with the person, that a defendant know that he would later use force, fraud or coercion to get that person to engage in a commercial sex act.

Intent is proven by showing a *pattern* of previously using force, fraud or coercion to get someone to engage in a commercial sex act in order to show that someone was intending to use that same pattern with the current victim. The pattern of previous behavior is circumstantial evidence of what the defendant knew he would do in the future.

The *pattern* is shown by *prior behavior connecting force, fraud and coercion with the sex act*. Here, the Government failed to show any pattern of sex trafficking that would indicate that, at the time that Mr. Long Andrews engaged with Melonie, he knew he would sex traffic her in the future.

Additionally, the only evidence the Government presented had to do with domestic violence and/or pimping. They never connected it any force, fraud or coercion with any commercial sex acts.

The intent element of sex trafficking is awkward and difficult to apply. In the *Todd* case, Ninth Circuit described the difficulty:

> *Todd's knowledge.* Here is a crux. Could Todd have known when he soft-soaped Whitney T., Whitney E., and Jemelle L. to go to work for him that later"force, fraud, or coercion would be used" to cause each of them to engage in commercial sex? How does anyone "know" the future?

*United States v. Todd*, 627 F.3d at 333-334. The Court states:

> What the statute means to describe, and does describe awkwardly, is a state of mind in which the knower is familiar with a pattern of conduct. If "to know" is taken in the sense of being sure of an established fact, no one "knows" his own or anyone else's future. As William Shakespeare said of time in Sonnet 115, its "million'd accidents creep in" and nothing is completely stable, no plan is beyond alteration. When an act of Congress requires knowledge of a future action, it does not require knowledge in the sense of certainty as to a future act. What the statute requires is that the defendant know in the sense of being aware of an established modus operandi <u>that will in the future cause a person to engage in prostitution.</u>

*Id*. at 334 (emphasis added). The evidence of knowledge, then, needs to come from a *prior pattern* of forcing someone to prostitute and the Government completely failed to do that in this case. The Court described how the pattern emerged with defendant *Todd*:

> The government's evidence showed that Todd had such awareness when he persuaded Whitney T. to work for him. He had an established practice of living off the earnings of Kelsey, doing so by rules controlling her work and payment of the proceeds to him. The jury could conclude that Todd knew he would follow the same pattern with Whitney T. and then with Whitney E. and Jemelle L.
>
> Just as a mother who has had one child in school and prepared his lunch knows that she will prepare the school lunch for her second child, just as a judge knows that his law clerks will use Westlaw, so Jerome Todd knew that he would use coercion to cause his sex workers to make money for him.

*Id*.

The problem in this case is that the Government failed to prove the pattern *with any prior victim*. The Government failed to prove that there was a pattern of Mr. Long Andrews forcing women to have sex for money *prior to the time* he engaged with Melonie.

It would have had to been in Mr. Long Andrews' mind, at the time he engaged with Melonie, that at some point in the future he would force her to prostitute. In sex trafficking case law, that is shown by prior acts. Here, the Government had no prior acts that would have been circumstantial evidence that Mr. Long Andrews was a *sex trafficker*. They only had prior acts of *domestic violence*. There was no pattern of sex trafficking that a jury could rely on to determine his intent prior to him engaging with Melonie.

Typically, sex trafficking cases are proven because there are prior sex trafficking victims and the victim or victims testify about the pattern of sex trafficking to such a degree that a plan is shown. Here, the Government chose to avoid putting on the victim of the prior act of domestic violence and chose to put on the alleged victim in this case and decided to piece together circumstantial evidence of intent by offering up evidence of domestic violence and pimping. What they did NOT show was that there was a pattern of *sex trafficking* that would be circumstantial evidence that he was sex trafficker and would, therefore, it would be obvious that he would continue his pattern of sex trafficking. *The nexus between a prior pattern of force, fraud or coercion to force prostitution is missing.* Without that, there can be no conviction under this statute because intent is not proven.

The crime is not proven merely by showing that a commercial sex act was done through force, fraud or coercion but that a defendant knew, in his mind, at the time of engaging with the person that such force, fraud or coercion would be used later. Todd says that the way that is shown is through *prior pattern of sex trafficking*. That is completely absent here.

In *Todd,* the Government diligently amassed evidence of a pattern of sex trafficking with multiple women. *Id.* at 331. It also put its victims on to testify. In *Todd*, the defendant recruited four young women to prostitute for him. *Id.* With each of the young women, the Government was able to show that Todd exerted force on them *related to rules involved in his commercial sex act enterprise. Id*. (emphasis added). He beat the women for hiding money from him, beat them in front of each other explicitly for violating the prostitution rules, had others beat them for violating the rules and beat one when she tried to stop prostituting for him. *Id*. *Todd* recruited one woman after another knowing, at the time, that he would use this pattern of violence *to manage his prostitution business. Id.* (emphasis added). The Government in Todd did not merely have evidence of pimping and evidence of domestic violence that it tried to link together by mere argument and without a history of sex trafficking. The Government in *Todd* put the victims on the stand and laid out a clear pattern of prostitution perpetrated via violence.

<u>There is no proof in this case, however, that Mr. Long Andrews had ever used violence or coercion to get someone to prostitute for him at the time he engaged with Melonie. In other words, there was no pattern of this behavior that would indicate that he believed that this pattern would continue with Melonie.</u>

The cross-over is what is needed to prove the intent requirement of 18 U.S.C. section 1591. It was clear that the *Todd* defendant had the intent. His pattern of violence was centered on getting the women to comply *with prostitution rules* and he used violence *as a tool*.

What the Government has here is Mr. Long Andrews committing reactive, garden variety domestic violence. And garden variety pimping. It is all sad, and tragic, but it is not sex trafficking.

The Government's proposed inexplicably intertwined evidence allegedly showing that Mr. Long Andrews started his alleged sex trafficking pattern with Trenay B. was lacking in the same nexus. Again, there was only evidence of domestic violence. Moreover, the Government did not want to gamble with calling Trenay to testify. Trenay was available to the Government and actually showed up at their office on the first day of trial. The decided not to take the risk of calling her and later had to suffer their evidence being stricken when they could not prove that Mr. Long Andrews committed domestic violence on her. This was their attempt at a pattern prior to Mr. Long Andrews meeting Melonie. As set forth below, this evidence was highly prejudicial and likely confused and prejudiced the jury as well. More to the point, it was an attempt to show a pattern even though it would only have shown a pattern of domestic violence and not sex trafficking.

If sex trafficking could be proven by showing domestic violence between a boyfriend pimp and a girlfriend prostitute, without showing specifically that violence was tied to a commercial sex act, then every pimp convicted of domestic violence would also be guilty of sex trafficking. That is not the case. The nexus is crucial.

B.

PREJUDICIAL EVIDENCE OF PRIOR DOMESTIC VIOLENCE WAS INTRODUCED, STRICKEN AND NOT CURED

Mr. Long Andrews objected to the introduction of the prior domestic violence incident regarding Trenay via motion in limine. *ECF No. 153*. Federal Rule of Evidence 103(a) provides that the defense, once having objected, is not required to make a continuing objection. On the first day of trial, in the hearing on the motion in limine, defense counsel alerted the Court to the fact that the Government did not intend to call Trenay in order to prove up this prior conduct.

The Court verified with the Government that they did not intend to call Treney to testify to this prior (and also that they did not intend to call the Victim) and, upon hearing that the Government did not intend to call either woman, the Court responded, appropriately, with "Wow."

The Government assured the Court that this prior evidence regarding Trenay could be proven and was inextricably intertwined which denied the defense a hearing under Federal Rule of Evidence 404(b) in which the Government's inability to prove the prior conduct would likely have been revealed. Acts that are inextricably intertwined are exempted from the requirements of Federal Rule of Evidence 404(b). *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995).

As predicted, and in spite of how the Government assured the Court that the prior conduct with Trenay would be proven, the Government failed to prove it at trial. This failure became obvious only after two law enforcement witnesses had testified about the prior domestic violence with Trenay, after a body camera video was shown on mute (which also came off as quite confusing), after multiple pictures of Trenay and her injuries were shown and after a civilian witness testified.

Federal Rule of Evidence section 103(d) provides "[t]o the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." The Government's assertion that it would prove this alleged inextricably intertwined evidence and its inability to do so put the Court in the difficult position of having extensive inadmissible evidence come before the jury.

This was *extremely prejudicial and confusing* evidence that could not be cured. The jury was excused after this presentation and, when they returned, all they heard was that they should not consider the evidence and that the trial would continue. In a case where the Government

leaned *heavily* on Mr. Long Andrews' domestic violence prior, it is extremely unlikely that this had no effect on the jury regardless of any curative instruction in the moment. This is not a case where there was an errant passing reference by a witness in testimony or where a single witness testified or partial testimony or a single photo was stricken. This evidence consisted of the testimony of multiple officers, photos and video evidence in addition to the civilian witness. The bell was rung, loudly and repeatedly, and there was no way to unring it.

In *United States v. Thomas*, 2021 WL 4061109 at *1 (9th Cir. September 7, 2021), the Court stated: "[W]hether a curative instruction mitigates inappropriate testimony [is determined] by "weigh[ing] the forcefulness of the instruction and the conviction with which it was given against the degree of prejudice generated by the [challenged] evidence." When assessing prejudice, "the probative force of the inadmissible evidence must be compared with that of the admissible evidence which supports the verdict." [internal cite omitted].

Even the most forceful of curative instructions would not cure this error because of the amount of evidence that was presented, the type of evidence presented and the link that the evidence was supposed to provide in the trial. Two officers and a civilian testified. Multiple crime scene photos were submitted. Body cam footage was played. All of this evidence purportedly provided a pattern of violence that the Government was attempting to use to show circumstantial evidence of Mr. Long Andrews' intent to sex traffick Melonie. This evidence was incredibly prejudicial and it was evidence of pattern that the Government was showing as intent. Thus, it was incredibly probative.

The fact that this was not cured was evidenced by the fact that the jury asked, part way through deliberation, to listen to a jail call between Mr. Long Andrews and his uncle in which

Trenay, the prior domestic violence victim, was mentioned. The evidence as to Trenay was stricken but it still had an effect.

The Government, in its zest to prove these sex trafficking by force allegations, led Judge Shubb astray on evidence in the related case of Jaquorey Carter. Had the Government proffered the evidence as FRE 404(b) evidence, a hearing could have been had prior to trial and the evidence would have been kept from the jury instead of being presented and stricken.

The Government overestimated its evidence in this matter just as it overestimated it in the related matter, USA v. Jaquorey Carter. It chose not to call the alleged victim in the Carter case just as it chose not to call the alleged victim in this case. In the Carter matter, Judge Shubb granted a motion for new trial on the count of sex trafficking by force due to lack of evidence. In that case, the Government persuaded Judge Shubb to enter evidence of the villa park domestic violence between Antonio Long Andrews and Melonie D. (introduced in this case also) as evidence against Jaquorey Carter.

The Court lamented, after being promised that evidence regarding Antonio Long Andrews and Melonie was proper and finding it underwhelming that "[o]verall, had the court known before trial how little evidence would ultimately connect Long's assault of [Melonie D.] to defendant's conduct toward Culbert, the court would not have admitted evidence of that episode under Rule 403 of the Federal Rules of Evidence. There is also a high risk that the jury used evidence of this episode to assume that defendant must have used force, threats of force, or coercion against Culbert, assuming that if defendant's colleague acted in such a manner, defendant did likewise. *Order Granting New Trial, USA v. Carter, p. 6, ECF No. 144.* The Court in Carter also expressed that the Government did not prove that Antonio Long Andrews sex trafficked Melonie D. by force:

THE COURT: You know, something maybe you didn't—maybe it's because you didn't argue it to the jury but there's no evidence that Antonio's force on that woman was used to cause her to engage in a commercial sex act.

THE COURT: As a matter of fact, for all we can tell, she had finished her commercial sex acts for the day, because they were leaving the motel, and then they get in this fight. Maybe it's over money. Maybe it's over – who knows. But there's no evidence that Antonio's use of force was used to cause anybody to engage in a commercial sex act.

*Transcript from USA v Carter, pg. 23, lines 12-24 - portion attached as Exhibit B*.

Moreover, the Court commented on the failure of the Government to call the alleged victim in Mr. Carter's case. The Court noted that "[w]hile the court does not hold that a victim must testify in order to support a conviction for sex trafficking by force, fraud, or coercion under 18 U.S.C. § 1591, the court is unaware of any case where such a conviction has been upheld without the testimony of the victim. *Order Granting New Trial, USA v. Carter, p. 5 fn. 2, ECF No. 144.*"

C.

DEFENDANT'S OPENING STATEMENT WAS PREJUDICED BY THE
DEFERRAL OF HIS MOTION TO ADMIT HIS SEX TRAFFICKING EXPERT

The Government, in spite of repeated requests by defense counsel, would never tell defense counsel whether or not they objected to the defense expert Armand King. Nevertheless, defense counsel advised the Government months before trial that the defense had no objection to the Government expert.

Because the Government had still not provided an answer at the time that Motions in Limine were due, defense counsel filed a Motion to Admit the defense expert. *ECF No. 151*. The

Government did not file a Motion in Limine seeking to exclude the defense expert but only filed an opposition to defense counsel's motion to admit the defense expert. Because reply briefs are not allowed, this deprived defense counsel of the opportunity to reply in writing.

In spite of the fact that defense counsel had no obligation to provide expert witness notice, because she never triggered Rule 16, she still provided *the exact same format of expert witness summary* to the Government as the Government provided to her and did so in a timely manner providing plenty of actual notice. Nevertheless, the Government objected to the defense expert again during the motion in limine hearing which resulted in the Court deferring the ruling. Because opening statements occurred on the same day, defense counsel could not rely on a ruling that the defense expert would be admitted and her opening statement was prejudiced.

The true nature of the defense reciprocity, and the impropriety of the Government's objection, was made so clear in a motion to reconsider that the Government chose to stipulate to the entry of the defense expert the next morning rather than have a hearing on the issue. The harm, however, was done. Opening statements were completed the day before and defense counsel had to prepare for the Government's expert the next day without knowing whether or not she could rely on the defense expert coming in to rebut the Government expert. These actions prejudiced the defense.

As noted in *Rudin v. Myles*, 2022 WL 1556168 at *30 fn 53 (D. Nev. May 15, 2022): "The opening statement of a criminal case is extremely important in asserting a successful defense. In fact, studies have repeatedly shown that the impression a juror has after opening statements usually carries with him or her to become the verdict in the case." Defense counsel could not reference the Defense expert in opening statement without running the risk that the expert would not later be allowed to testify. The result was that the jury only heard about the

Defense expert at the time that the defense started its case in chief and after the Government expert testified. The jury was denied the knowledge, as it viewed the Government's case in chief, that a Defense expert would come to rebut that evidence. As such, the defense opening statement was prejudiced as it could not lay out what the evidence was expected to show.

### D.

DEFENDANT'S EXPERT WAS UNDULY LIMITED BY THE RULING THAT HE COULD NOT PLAY RECORDED INTERVIEWS OF PIMPS AND PROSTITUTES THAT HE RELIED ON TO SHOW INSTANCES OF CONSENTIAL PROSTITUTING WITH PIMP MANAGEMENT

Expert witnesses are allowed to reference items upon which they relied in their testimony. Hearsay evidence relied upon by an expert in forming his opinion, as long as it is of a type regularly relied upon by experts in that field, may be allowed. *Fed. R. Evid. 703.*

The material that the Defense expert relied upon, in part, consisted of interviews with pimps and prostitutes. Interviews with pimps and prostitutes is the type of material normally relied upon by sex trafficking experts.

Whether or not prostitutes ever consent to prostitution while working with a pimp was a crucial point of contention between the Government expert and defense expert. The defense expert had videos of interviews with pimps and prostitutes in which they discussed prostituting and pimping as being consensual (rebutting the Government's assertion that these relationships are never consensual). These video interviews would have allowed the defense expert to show to the jury some of the basis of his expert opinion on the possibility of consent. The video interviews would have offered insight on the basis for the defense expert's opinion. This evidence was excluded.

This evidence consisted of the following clips from the videos which are included below:

<u>Pimp interview-Kenny Red</u>

**4:08 - 5:19** Kenny talks about girls wanting to be in the games… Also about square misunderstanding the game… "The prostitute is going to do it weither theres a pimp or not."

**7:35 - 7:59** Kenny describes Females calling him asking to be in the game

**19:00 - 20:00** Kenny describes some different women in the game

**23:14 - 24:14** Kenny describes the code of the streets and differences of pimps

Interviewer Mark, describes how pimps are not understood by squares and the street code:

<u>Ex Prostitute interview-Martina</u>

**1:37** Izm is a code / other language from the subculture

**3:24** Why do girls pay pimps

**6:38 - 8:58** why do people stay in the game

**9:35** The most misunderstood part of the game

**12:39** Being a happy hooker

**19:17** advice to a girl getting in the game

<u>Pimp interview-Kenny Red</u>

**3:48** Do you use intimidation and force

**11:30 12:54** The thing most misunderstood from outsiders

<u>Ex Prostitute interview-Jazzy</u>

**4:40** talking good on her first pimp and experience with pimps being positive

**7:36 7:56** Pimpin and ho'n is a lifestyle . Not about beating

**8:12** She went to her pimps to be put on

**8:37** She left her career to Hoe

**9:05** why do u stay in

- 13 -

**14:45** description of the game

**16:30** Drug usage

Ex rProstitute interview-Jazzy

**8:00** Jazzy describes a love relationship with a pimp

**20:00** minutes talking about how the game was a plus for her and she learned a lot

**22:40** she explains how people think the game is about being forced and someone taking all your money and beating you. She goes on to explain how she chose to be in the gang. How she chose her pants and paid to be seriously engaged with him

**24:00** she explains how she and others aren't forced. When they're tired they can get up and go

**25:20** she describes how the game is addictive and like a drug. She goes into great detail on why girls are in the game like herself

The interviews are located at the following links:

https://www.youtube.com/watch?v=1uCyblaFL3A&authuser=0

https://www.youtube.com/watch?v=Vi5eoAbZldQ&authuser=0

https://www.youtube.com/watch?v=YnRDh6zi4qc&authuser=0

https://www.youtube.com/watch?v=ZWC4iv6cW0o&authuser=0

   A major point of contention between the Government expert and the Defense expert had to do with whether or not prostitutes ever partner with pimps and then consensually prostitute. All of these clips speak to the quality and type of material that the Defense expert relied upon.

   The video clips were vital to support the Defense expert's opinion because the veracity of the interviewees as to consent, and other issues, are obvious from their non-verbal body language, tone of voice and the open way in which they speak to the interviewer. The Defense expert had reliable material upon which he relied which directly rebutted the Government expert. The Government attacked the Defense expert qualifications in such a manner as to encourage the jurors not to believe him. These videos would have rebutted the Government's contention that

the Defense expert did not know his subject matter as to consent and the other issues addressed in the video clips.

E.

JAIL CALLS BETWEEN MR. LONG ANDREWS AND MELONIE PROFFERED BY THE DEFENSE SHOULD HAVE BEEN ADMITTED AS (1) NON-HEARSAY AND (2) UNDER A HEARSAY EXCEPTION FOR THEN EXISTING MENTAL, EMOTIONAL OR PHYSICAL STATE

The Government had to prove a pattern of conduct in which Mr. Long Andrews used force, fraud or coercion in the *past* as circumstantial evidence that, at the time he engaged with Melonie, he intended to do that to her in the future. One of the problems is that *they never proved an actual commercial sex act* that was *committed because Mr. Long Andrews used force, fraud or coercion.*

Because they did not call Melonie to testify, they had to rely on circumstantial evidence about the nature of their relationship. They did this by relying on the Villa Park domestic violence incident (which was not shown to be related to her doing or not doing something related to a commercial sex enterprise) and on the wiretapped and jail calls.

The Government was allowed to introduce snippets of jail calls between Mr. Long Andrews and Melonie but Mr. Long Andrews' request to introduce the same was denied on hearsay grounds. The calls were offered as non-hearsay because they were offered, not for the truth of the matter asserted, but for the interaction between the two people and to show that lack of fear of Melonie. The calls were also offered under a hearsay exception of lack of fear under then existing mental or emotional state.

Evidence designed to show state of mind of another is admissible as exception to hearsay rule. *United States v. Cosby*, 601 F.2d 754, 759 (5th Cir. 1979). In an action against the county and sheriff under 42 USCS § 1983, the Ninth Circuit reversed because testimony by a sister about her brother's statements to her about events at the jail were excluded. *Wagner v. County of Maricopa*, 747 F.3d 1048 (9th Cir. 2013). The Ninth Circuit held that the prior statements were admissible under state-of-mind exception to hearsay rule since testimony was offered to establish the brother's state of mind. *Id.* The sister could testify as to the statements her brother made, his tone of voice, and his state of mind in making them. The court found that the trial court's exercise of discretion was both erroneous and prejudicial and reversed. *Id.* at 1054.

The jury requested to listen to the jail calls between Mr. Long Andrews and Melonie part way through their deliberations. These calls clearly had an effect and were unmet with calls showing more of the relationship because Mr. Long Andrews' submitted jail calls were excluded.

The defense proffered jail calls, a flash drive of which were submitted to the Court and to which the Court listened, will be submitted as an Exhibit to this motion.

F.

OVERALL, THE EVIDENCE WAS INSUFFICIENT TO PROVE MR. LONG ANDREWS COMMITTED SEX TRAFFICKING

As was set forth above, there is no evidence that Mr. Long Andrews had engaged in a pattern, prior to engaging with Melonie, that would prove that he had an intent to use force, fraud or coercion on her *in the future* on her. There is no evidence showing that Mr. Long Andrews ever actually used force, fraud or coercion to cause Melonie to engage in a commercial sex act. There is evidence that he was committed domestic violence against Melonie but not that he sex

trafficked her. The *requisite nexus* for sex trafficking is missing. The evidence shows that he has been guilty of domestic violence. The evidence shows that he has allegedly been pimping. Neither of those constitute human sex trafficking.

In Mr. Long Andrews' case, there is not evidence sufficient to convict. There is evidence of domestic violence. There is evidence of pimping. There is no evidence that Mr. Long Andrews engaged with Melonie D. with the knowledge that, at some time in the future, he would be using force on her to cause her to engage in a commercial sex act. There is no evidence that Mr. Long Andrews' needed or wanted to use force on Melonie related to any commercial sex act as is required by the statute.

The Villa Park domestic violence incident was not shown to be related to any argument regarding prostitution. The wiretapped calls submitted by the Government lacked all context, cultural and otherwise, consisted of musings mostly of a laughing, jovial and often high Mr. Long Andrews. None indicated any intent or effort by Mr. Long Andrews to cause Melonie to prostitute through force, fraud or coercion.

The jail calls between Mr. Long Andrews and his uncle mentioned Trenay, the prior domestic violence victim, compounding the prejudicial and confusing effect of the stricken evidence submitted to the jury relating to Trenay.

The jail calls between Mr. Long Andrews and Melonie indicate that he told her she could do what she wanted to do. They indicate a couple arguing and they indicate that Melonie was not afraid of Mr. Long Andrews. The jail calls lacked context, cultural and otherwise.

III.

RENEWED MOTION FOR ACQUITTAL (FED. R. CRIM. P. 29)

Pursuant to Federal Rule of Criminal Procedure 29(a), the defendant, Antonio Long Andrews, hereby moves the Court for a judgment of acquittal on the sole count of the superseding indictment. "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed R. Crim P. 29 Mr. Long Andrews' Motion for Acquittal is filed at *ECF No. 224.*

IV.

RESERVE RIGHT TO SUPPLEMENT

Defense counsel promptly ordered the trial transcript but said transcript has yet to be received. Mr. Long Andrews reserves the right to supplement his Motion after receipt of the trial transcript.

V.

CONCLUSION

Based on the above-referenced reasons, Mr. Long Andrews requests that the Court grant an acquittal pursuant to Federal Rule of Criminal Procedure 29 or, in the alternative, a new trial pursuant to Federal Rule of Criminal Procedure 33.

Dated:   July 25, 2022                    Respectfully submitted,

/s/ Toni L. White
TONI L. WHITE
Attorney for Defendant
ANTONIO LONG